UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                    Date:  **March 27, 2013**

Title:        In re:  Christopher A. Eberts

---

PRESENT:  HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT
                    JUDGE

          Rita Sanchez                                                     None Present
          Courtroom Deputy                                          Court Reporter

ATTORNEYS PRESENT FOR APPELLANTS:          ATTORNEYS PRESENT FOR APPELLEE:

          None Present                                                    None Present

PROCEEDINGS (IN CHAMBERS):  ORDER AFFIRMING BANKRUPTCY
                                                      COURT ORDERS AND JUDGMENTS

        Plaintiffs-Appellants Palm Finance Corporation ("Palm"), Night Train
Films, LLC ("NTF LLC") and A-Mark Entertainment, LLC ("AME") have filed
this bankruptcy appeal from the following:  (1) Amended Judgment filed and
entered September 26, 2011; (2) Order Granting in Part and Denying in Part
Plaintiff's Motion to Alter [and] Amend the Judgment and to Amend or Make
Additional Findings of Fact filed and entered on September 26, 2011; and, (3)
Memorandum of Decision [Re:]  Plaintiff's Motion to Alter and Amend the
Judgment and to Amend or Make Additional Findings of Fact filed and entered on
September 26, 2011, pursuant to which the Bankruptcy Court amended the
Judgment After Trial filed and entered on June 9, 2011 (collectively, the "Orders
and Judgments").  (*See* Notice of Appeal at 1-2 & Exs. A-C (Docket No. 2)).

        The Court has reviewed the papers filed on this appeal and held a hearing on
March 4, 2013.

**Procedural Background**

        On November 3 and 4, 2010, and February 8, 2011, the Bankruptcy Court
for the Central District of California (the Honorable Ernest M. Robles) conducted a
trial in this adversary proceeding.  (Excerpts of Record ("ER") 279 (Docket Nos.

---

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                         Date:  **March 27, 2013**

Title:        In re:  Christopher A. Eberts

---

17-1 to -12)).  Plaintiffs-Appellants sought to exempt from discharge certain claims against Debtor-Defendant-Appellee Christopher A. Eberts.  (ER 280-81).

On June 7, 2011, the Bankruptcy Court issued its Memorandum of Decision.  (ER 279).  And, on June 9, 2011, the Bankruptcy Court issued the corresponding Judgment After Trial.  (ER 308).

In the Judgment After Trial, the Bankruptcy Court awarded judgment in favor of Palm in the amount of $190,000, finding that this claim (partially) was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  (ER 308-09).  The Bankruptcy Court ruled that the remainder of Palm's claim would be subject to any discharge received by Eberts in his Chapter 7 bankruptcy case.  (ER 309).

Furthermore, the Bankruptcy Court awarded judgment in favor of Eberts with respect to NTF LLC's and AME's claims and ruled that their respective claims would be subject to any discharge received by Eberts in his Chapter 7 bankruptcy case.  (ER 309).

On June 23, 2011, Palm and NTF LLC filed a Motion to Alter and Amend the Judgment and to Amend or Make Additional Findings [of] Fact (the "Motion").  (*See* Notice of Appeal Ex. C at 1-2).  On September 26, 2011, the Bankruptcy Court issued its Memorandum of Decision on the Motion, as well as an Order Granting in Part and Denying in Part the Motion and an Amended Judgment.  (Notice of Appeal Exs. A-C).

In ruling on the Motion, the Bankruptcy Court amended that portion of the Judgment entered on June 9, 2011, in favor of Palm in the nondischargeable amount of $190,000 to include prejudgment interest pursuant to 28 U.S.C. § 1961 in the total amount of $2,033.40.  (Notice of Appeal Ex. A at 2).  The other provisions of the Judgment entered on June 9, 2011, remained unchanged.  (Notice of Appeal Ex. A at 2).

Plaintiffs-Appellants filed a timely notice of appeal on October 7, 2011.  (Docket No. 2).  This appeal raises five questions for review.  The first three

---

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                    Date:  **March 27, 2013**

Title:      In re:  Christopher A. Eberts

---

questions relate to NTF LLC's claim against Eberts, which the Bankruptcy Court concluded would be subject to discharge.  The fourth relates to that part of Palm's claim against Eberts which the Bankruptcy Court likewise concluded would be subject to discharge.  And the fifth relates to the calculation of prejudgment interest on the $190,000 amount of Palm's (partial) claim, which the Bankruptcy Court concluded was excepted from discharge.  Specifically,

1. Plaintiffs-Appellants contend that NTF LLC's claim should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) based on Eberts's alleged fraud or defalcation while acting in a fiduciary capacity.  Did the Bankruptcy Court err by concluding that NTF LLC's claim was *not* excepted from discharge on this basis?

2. Alternatively, Plaintiffs-Appellants contend that NTF LLC's claim should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) based on Eberts's alleged embezzlement.   Did the Bankruptcy Court err by concluding that NTF LLC's claim was *not* excepted from discharge on this basis?

3. Alternatively, Plaintiffs-Appellants contend that NTF LLC's claim should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) based on conversion.   Did the Bankruptcy Court err by concluding that NTF LLC's claim was *not* excepted from discharge on this basis?

4. Plaintiffs-Appellants contend that Palm's claim should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(B) based on a materially false writing.   Did the Bankruptcy Court err by concluding that Palm's claim was *not* excepted from discharge on this basis?

5. Plaintiffs-Appellants contend that Palm should have been awarded prejudgment interest on the Judgment amount of $190,000 pursuant to California Civil Code Sections 3287 and 3289.  Did the

---

UNITED STATES DISTRICT COURT          JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                    Date:  **March 27, 2013**

Title:          In re:  Christopher A. Eberts

---

Bankruptcy Court err in awarding prejudgment interest pursuant to
28 U.S.C. § 1961 rather than California law?

(Appellants' Opening Br. at 2 (Docket No. 17)).

**Factual Background**

By now, the facts are well known to the parties and the Bankruptcy Court.
Here, the Court only briefly summarizes the facts relevant to this appeal, relying on
the Bankruptcy Court's post-trial Memorandum of Decision and the parties' own
briefing on this appeal.

*Eberts*

Eberts is a movie producer.  (Appellee's Br. at 1 (Docket No. 20)).  Eberts
was the co-member and co-manager of a small production company, Rifkin/Eberts,
LLC ("RE LLC").  (Appellee's Br. at 1-2).  Eberts filed his bankruptcy petition in
February 2009.  (Appellants' Reply Br. at 17 (Docket No. 25)).

*NTF LLC's Claim Against Eberts*

NTF LLC was a limited liability company set up to finance the film "Night
Train," and its original members were AME and R/E LLC.  (ER 286).  R/E LLC
dissolved in early 2008.  (ER 286).  NTF's sole current member is AME.  (ER
287).

In July 2007, Palm loaned NTF LLC $2,539,541.25.  The loan proceeds
were deposited into a City National Bank ("CNB") account.  (ER 287).  R/E was
responsible for the production of Night Train, and Eberts handled this CNB
account.  (ER 287).  The CNB account was a special purpose vehicle dedicated to
cover the costs of producing Night Train and for no other purpose.  (ER 287).

NTF argues that Eberts effected several money transfers from out of this
CNB account that were prohibited because the transfers were not related to the
production of Night Train.  (*See, e.g.*, ER 287-89).

---

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                    Date:  **March 27, 2013**

Title:         In re:  Christopher A. Eberts

---

### *Palm's Claim Against Eberts*

Palm's claim against Eberts is based on two loan transactions that Eberts personally guaranteed.  (ER 281).  Specifically, on October 11, 2006, Palm loaned $1 million to Who's Your Caddy, LLC ("WYC LLC"), and on September 26, 2007, Palm loaned $350,000 to Stag Night Films, LLC ("Stag Night LLC").  (ER 281).

Palm asserts that it relied on a written financial statement regarding Eberts's assets and liabilities (the "Financial Statement") in making both loans.  (ER 281).  The Financial Statement showed that Eberts had a net worth in the amount of $12,577,060.00, as of August 31, 2006.  (ER 281).  The Financial Statement was an attachment to the Guarantor's Verification of Accuracy of Financial Statement ("Verification"), which provided that the Financial Statement was complete and accurate as of August 31, 2006, and as of October 11, 2006 (*i.e.*, the effective date of the Verification).  (ER 281).  Eberts prepared the Financial Statement by himself, and Palm reviewed and materially relied on it in making the two loans. (ER 281).

Palm contends that Eberts's Financial Statement was false because it overstated the value of certain assets and failed to include certain liabilities.  (*See, e.g.*, ER 282-85).  Palm argues that Eberts was most likely insolvent at the time of these loans, and that he had a reckless disregard for the truth of his financial circumstances as reflected in the Financial Statement.  (ER 285).  Palm also contends that Eberts submitted the Financial Statement with the intent to deceive Palm as evidenced by the totality of the circumstances, and that Palm reasonably relied on the Financial Statement in making these loans.  (ER 285).

### Standards of Review

The parties agree on the following standards of review:

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                                    Date:  **March 27, 2013**

Title:        In re:  Christopher A. Eberts

opportunity of the bankruptcy court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013.

Conclusions of law are reviewed de novo.  *In re Littleton*, 942 F.2d 551, 553 (9th Cir. 1991).

"When a mixed question of law and fact is presented, the standard of review turns on whether factual matters or legal matters predominate."  *United States v. Marbella*, 73 F.3d 1508, 1515 (9th Cir. 1996) (citation omitted).  "If an 'essentially factual' inquiry is present, or if the exercise of the district court's discretion is determinative, then we give deference to the decision of the [court]; otherwise, we conduct a de novo review."  *Id.* (citation omitted).

**Discussion**

>   ***1. NTF LLC's Section 523(a)(4) claim (fraud or defalcation while acting in fiduciary capacity):  The Bankruptcy Court properly concluded that Eberts was not a fiduciary for purposes of Section 523(a)(4)***

Under 11 U.S.C. § 523(a)(4), "debts that arise from 'fraud or defalcation while [the debtor was] acting in a fiduciary capacity . . .' are nondischargeable."  *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986) (citation omitted).

NTF LLC argues that Eberts was a fiduciary of NTF LLC based on the fact that R/E LLC was a manager of NTF LLC.  (ER 289).  Stated differently, as a manager of NTF LLC, R/E LLC was a "trustee" over the assets of NTF LLC and owed NTF LLC the "duty of acting in the highest good faith."  (ER 289).  According to NTF LLC, Eberts owed these same duties to NTF LLC because he was a manager of R/E LLC.  (ER 289).

Practically speaking, NTF LLC contends (1) that R/E LLC was a manager of NTF LLC and therefore owed a fiduciary duty to NTF LLC, and (2) that Eberts was a manager of R/E LLC and therefore owed a fiduciary duty to R/E LLC – and, therefore, to NTF LLC.

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                    Date:  **March 27, 2013**

Title:        In re:  Christopher A. Eberts

---

The Bankruptcy Court rejected this argument, concluding as follows:  NTF LLC "provides no authority that [R/E LLC]'s fiduciary status extends to its individual managers/members.  Consequently, [NTF LLC] has failed to prove that [Eberts] is a fiduciary and its § 523(a)(4) claim based on fraud or defalcation while acting in a fiduciary capacity fails."  (ER 304).

The facts relevant to this issue are not in dispute.  Instead, the determinative legal question on this appeal is whether Eberts was a fiduciary of NTF LLC for purposes of Section 523(a)(4).  "Because the issue of whether a relationship is 'fiduciary' within the meaning of 11 U.S.C. § 523(a)(4) is a question of federal law, it is reviewed de novo."  *Ragsdale*, 780 F.2d at 795 (citation omitted).

"The meaning of 'fiduciary' in § 523(a)(4) is an issue of federal law."  *Id.* at 796 (citation omitted).  However, the "broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable in the dischargeability context."  *Id.* (citation omitted).

Importantly, "[t]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt."  *In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003) (citation and internal quotation marks omitted).  Under Section 523(a)(4), the "trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing; [and] the debtor must have been a 'trustee' before the wrong and without reference to it.  These requirements eliminate constructive, resulting or implied trusts."  *Ragsdale*, 780 F.2d at 796 (citations omitted).

"Although the concept of fiduciary is to be narrowly defined as a matter of federal law, state law is to be consulted to determine when a trust in this strict sense exists."  *Id.* (citation omitted).  "If state law creates an express or technical trust relationship between the debtor and another party and imposes trustee status upon the debtor, the debtor will be a fiduciary under section 523(a)(4)."  *In re Baird*, 114 B.R. 198, 202 (B.A.P. 9th Cir. 1990) (citation omitted) ("The debt alleged to be non-dischargeable must arise from a breach of trust obligations

---

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                    Date:   **March 27, 2013**

Title:        In re:  Christopher A. Eberts

imposed by law, separate and distinct from any breach of contract." (citation omitted)).

"The statute must define the trust res, spell out the trustee's fiduciary duties and impose a trust prior to and without reference to the wrong which created the debt."  *Id.* (citations omitted) (discussing Arizona statute which "provides that certain moneys paid to a contractor shall be deemed to be held in trust for the benefit of persons furnishing labor and materials").  Additionally, in the Ninth Circuit, the "'express or technical trust' required for section 523(a)(4) liability can arise from a state's common law."  *In re Abrams*, 229 B.R. 784, 790 n.6 (B.A.P. 9th Cir. 1999) (citations omitted).

"The elements of a valid trust under California law include a competent trustor, an intention on the part of the trustor to create a trust, a trustee, an estate conveyed to the trustee, an acceptance of the trust by the trustee, a beneficiary, a legal purpose, and a legal term."  *In re Teichman*, 774 F.2d 1395, 1399 (9th Cir. 1985) (discussing requirements of fiduciary duty under Section 523(a)(4)).

According to NTF LLC, Eberts "acted in a fiduciary capacity based on the obligations in the NTF LLC Operating Agreement, his exclusive control over the CNB account, and the relationship between Eberts, R/E LLC and NTF LLC. (Appellants' Reply Br. at 3).

Essentially, NTF LLC argues that under the totality of the circumstances Eberts was a fiduciary of NTF LLC.  While this may be true in a general – or even some legal – sense, this Court agrees with the Bankruptcy Court that NTF LLC has identified no authority for the proposition that Eberts was a fiduciary *for purposes of Section 523(a)(4)*.

NTF LLC argues that it has identified a trust obligation imposed by California law.  *See In re Baird*, 114 B.R. at 202.  In *In re Abrams*, the Bankruptcy Appellate Panel ("BAP") imposed a so-called "second-tier" fiduciary duty in the partnership context.  *See* 229 B.R. at 790.  The BAP found "ample support for the proposition that ABWA, as general partner of Sea Palms, owed a fiduciary duty to

UNITED STATES DISTRICT COURT                      JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 11-08827-MWF**                    Date:  **March 27, 2013**

Title:       In re:  Christopher A. Eberts

---

Sea Palms . . . . [and that the debtor], as general partner of ABWA, owed a
fiduciary duty to ABWA."  *Id.* at 790.  As the BAP stated, "What is less clear is
whether Abrams [*i.e.*, the debtor] directly owed Sea Palms a fiduciary duty simply
by virtue of the duties which flowed from Abrams to ABWA and from ABWA to
Sea Palms."  *Id.*  Ultimately, the BAP concluded on the facts of the case that the
debtor, "as the general partner of the general partner of the limited partnership, is a
'fiduciary' for section 523(a)(4) purposes."  *Id.* at 792.

   Here, NTF LLC analogizes itself to Sea Palms, R/E LLC to ABWA, and
Eberts to the debtor in *In re Abrams*.  In this respect, NTF LLC's argument
proceeds in two steps:  ***First***, under California Corporations Code § 17153, the
"fiduciary duties a manager owes to the limited liability company and to its
members are those of a partner to a partnership and to the partners of the
partnership."  ***Second***, *In re Abrams* held that a so-called "second-tier" partner is a
fiduciary under Section 523(a)(4).  Therefore, NTF LLC argues that, under
California law, a "second-tier" manager/member of a limited liability company
likewise is a fiduciary under Section 523(a)(4).

   This argument fails.  As a preliminary matter, *In re Abrams* is not binding on
this Court.  "BAP decisions cannot bind the district courts themselves.  As article
III courts, the district courts must always be free to decline to follow BAP
decisions and to formulate their own rules within their jurisdiction."  *Bank of Maui
v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990).

   Regardless, and as discussed above, Section 523(a)(4) requires an express or
technical trust imposed, in this case, by California statutory or common law.  NTF
LLC has identified no such authority.  Indeed, as the BAP stated in *In re Abrams*,
"[t]here is no ***California*** case directly on point addressing the 'second-tier' issue."
229 B.R. at 791 (emphasis added) (noting the "importance of control in
establishing fiduciary duties under California law").

   Instead, *In re Abrams* relied on the Fifth Circuit's interpretation of ***Texas***
partnership law.  *Id.* (discussing *LSP Inv. P'ship v. Bennett*, 989 F.2d 779 (5th Cir.
1993)).  The BAP noted that the Fifth Circuit "believed" that the Court of Civil

---

**CIVIL MINUTES—GENERAL**                                        **9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                       Date:  **March 27, 2013**

Title:        In re:  Christopher A. Eberts

---

Appeals of Texas in *Crenshaw v. Swenson*, 611 S.W. 2d 886 (Tex. Civ. App. 1980), "placed particular importance on the nature of the business relationship as a whole and the control which the 'second-tier' general partner imposed upon the entire enterprise." *Id.*  Specifically, according to the Fifth Circuit, and as quoted by the BAP in *In re Abrams*,

> In reviewing the line of cases that gave rise to the rule in Texas that the managing partner of a partnership owes to his copartners the highest fiduciary obligations known at law, it is clear that the issue of control has always been the critical fact looked to by the courts in imposing this high level of responsibility.

*Bennett*, 989 F.2d at 789; *see also In re Abrams*, 229 B.R. at 791.  Therefore, while the BAP in *In re Abrams* recited the appropriate standard, the analysis focused on the business relationship among the various partnerships – and, in particular, the question of control – more than on the creation of any express or technical trust.

        While this analysis may speak to the question who may qualify as a fiduciary under California law in a general sense, it does not necessarily speak to the question whether there is any express or technical trust under California law – and therefore a fiduciary duty under Section 523(a)(4).  It is this latter question that is determinative on this appeal.  *See In re Niles*, 106 F.3d 1456, 1463 (9th Cir. 1997) ("[A] debtor is only a 'fiduciary' for purposes of § 523(a)(4), where state law imposes an express or statutory trust on the funds at issue.").

        At the hearing, counsel for NTF LLC relied primarily on *In re Kalinowski*, 482 B.R. 334 (B.A.P. 10th Cir. 2012).  But this case is unavailing for the same reason.  In *In re Kalinowski*, the question was whether a technical trust had been created under a ***New Mexico*** statute:  "No express trust was alleged, so the plaintiff's claim that [the debtor] was acting as a fiduciary depends upon the existence of a 'technical trust.'  Technical trusts are typically created by statute and, in this case, [the creditor] relied upon § 60-13-23(F) of [New Mexico's] Contractors Act for the existence of a trust."  *Id.* at 338 (citation omitted).  Again,

---

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                              Date:  **March 27, 2013**

Title:       In re:  Christopher A. Eberts

this decision does not speak to the question whether an express or technical trust was created under California law.

Finally, as a matter of fact, it is clear – and implied from the Bankruptcy's Court's conclusion – that neither the NTF LLC Operating Agreement nor any other agreement created an express trust with respect to the funds in the CNB account.

Accordingly, the Bankruptcy Court's Orders and Judgments are AFFIRMED on this issue.

2. ***NTF LLC's Section 523(a)(4) claim (embezzlement):  The Bankruptcy Court properly concluded that the circumstances of Eberts's money transfers from the CNB account did not indicate fraud for purposes of Section 523(a)(4)***

Alternatively, NTF LLC argues that its claim is nondischargeable because the prohibited transfers from the CNB account constituted embezzlement for purposes of Section 523(a)(4).  *See* 11 U.S.C. § 523(a)(4) (debts that arise from "embezzlement" are nondischargeable).

"Federal law and not state law controls the definition of embezzlement for purposes of section 523(a)(4)."  *In re Wada*, 210 B.R. 572, 576 (B.A.P. 9th Cir. 1997).

Under Section 523(a)(4), the "elements of a claim based on embezzlement are" as follows:  "property owned by another is rightfully in the possession of a bankruptcy debtor"; "the bankruptcy debtor appropriates such property to a use other than the use for which the property was entrusted to the bankruptcy debtor"; and, "circumstances indicating fraud."  *In re Mickens*, 312 B.R. 666, 680 (Bankr. N.D. Cal. 2004) (citations omitted).

Here, the Bankruptcy Court concluded that the "first two elements for embezzlement are satisfied."  (ER 305).  The Bankruptcy Court found that Eberts had authority to transfer monies from the CNB account, and that Eberts made transfers for purposes other than the production of Night Train.  (ER 305).

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                          Date:  **March 27, 2013**

Title:        In re:  Christopher A. Eberts

---

The Bankruptcy Court also found that Eberts made the transfers at issue because R/E LLC was making several movies simultaneously, and that at times it became necessary to juggle funds among accounts designated for different movies. (ER 305).  According to the Bankruptcy Court, these circumstances may indicate "sloppy business practices," but "they do not indicate fraud."  (ER 305).

Again, NTF LLC does not quibble with the Bankruptcy Court's factual findings but instead argues, as a matter of law, that the circumstances surrounding these money transfers indicate fraud.

However, this Court agrees with the conclusion of the Bankruptcy Court. Embezzlement for purposes of Section 523(a)(4) requires a "specific intent to defraud." *In re Wilson*, 114 B.R. 249, 252 (Bankr. E.D. Cal. 1990).  Specifically, a plaintiff must prove "fraud in fact involving moral turpitude or intentional wrong rather than implied or constructive fraud."  *Id.* at 252 n.10 (citations omitted).

The undisputed facts demonstrate neither.  At most, Eberts was juggling money among accounts designated for different movies.  He neither intended to defraud NTF LLC nor intended any wrong.

Accordingly, the Bankruptcy Court's Orders and Judgments are AFFIRMED on this issue.

### 3. *NTF LLC's Section 523(a)(6) claim (conversion):  The Bankruptcy Court properly concluded that Eberts lacked intent to injure for purposes of Section 523(a)(6)*

Alternatively, NTF LLC argues that its claim is nondischargeable because the prohibited transfers from the CNB account constituted conversion for purposes of Section 523(a)(6).

"Section 523(a)(6) prevents discharge 'for willful and malicious injury by the debtor to another entity or to the property of another entity.'"  *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010) (citing 11 U.S.C. § 523(a)(6)).  The United States Supreme Court has "made clear that for section 523(a)(6) to apply, the actor

---

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                    Date:  **March 27, 2013**

Title:        In re:  Christopher A. Eberts

---

must intend the consequences of the act, not simply the act itself." *Id.* (citation omitted).  Specifically, "[b]oth willfulness and maliciousness must be proven to block discharge under section 523(a)(6)." *Id.*

In the Ninth Circuit, Section 523(a)(6)'s "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Id.* (citation omitted).  Furthermore, a debtor "is charged with the knowledge of the natural consequences of his actions." *Id.* (citation omitted).

In this case, the Bankruptcy Court found that Eberts "made the transfers because he needed the money for other movies, not to cause harm to [NTF LLC]." (ER 306).  Consequently, the Bankruptcy Court concluded that NTF LLC had failed to prove the intent necessary for willful injury and did not reach the malicious injury issue.  (ER 305-06).

For the reasons stated above, the Court again agrees.  The fact that Eberts may have juggled money among accounts designated for different movies does not indicate that Eberts intended to harm NTF LLC.

Nor does NTF LLC's reliance on the alternative, "substantial certainty" standard change this result.  It is implied, if not clear, from the Bankruptcy Court's conclusion that, on the undisputed facts, Eberts intended to replace any money improperly removed from the CNB account with money from an account designated for a different movie.  Therefore, NTF LLC failed to prove that injury was "substantially certain" to result from Eberts's conduct or that Eberts knew the "natural consequences of his actions" would have been harmful to NTF LLC.

Accordingly, the Bankruptcy Court's Orders and Judgments are AFFIRMED on this issue.

---

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                    Date:  **March 27, 2013**

Title:      In re:  Christopher A. Eberts

---

**4.  *Palm's Section 523(a)(2)(B) claim (use of a materially false statement in writing):  The Bankruptcy Court's findings of fact were not clearly erroneous***

    As discussed above, Palm's claim is based on two loan transactions that Eberts personally guaranteed.  However, Palm has not appealed the Bankruptcy Court's decision with respect to the second loan (*i.e.*, that made to Stag Night LLC).  (*See* Appellants' Opening Br. at 2 n.1).  Instead, Palm argues only that it relied on Eberts's Financial Statement in making the loan to WYC LLC, and that the Financial Statement was materially false.

    To succeed on a Section 523(a)(2)(B) claim, a plaintiff must prove the following, *by a preponderance of evidence*:

    (1) a [written] representation of fact by the debtor,
    (2) that was material,
    (3) that the debtor knew at the time to be false,
    (4) that the debtor made with the intention of deceiving the creditor,
    (5) upon which the creditor relied,
    (6) that the creditor's reliance was reasonable, [and]
    (7) that damage proximately resulted from the representation.

*In re McGee*, 359 B.R. 764, 772 (B.A.P. 9th Cir. 2006) (citations omitted); *see also* 11 U.S.C. § 523(a)(2)(B).

    According to the Bankruptcy Court, the written representations at issue are the line items on Eberts's Financial Statement.  (*See* ER 282-85, 291).  The materiality of these statements (the second element listed above) is not in dispute.  (ER 291).  However, the Bankruptcy Court found, as a matter of fact, that "Palm has only proven that one of the items at issue is false by a preponderance of the evidence" (*i.e.*, the line item related to the so-called "Orum Property").  (*See* ER 292-96).

---

UNITED STATES DISTRICT COURT          JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                    Date:  **March 27, 2013**

Title:        In re:  Christopher A. Eberts

---

Furthermore, the Bankruptcy Court found, "[b]ased on the evidence submitted at trial," that "only two of the alleged omitted liabilities should have been included on the Financial Statement" (*i.e.*, those related to the Eleven Eleven Films and "The Deal" guaranties).  (*See* ER 296-98).  With respect to every other line item, the Bankruptcy Court concluded that Palm had failed to prove falsity by a preponderance of the evidence.  (ER 298).  And with respect to those items as to which Palm had shown falsity, the Bankruptcy Court concluded, again as a matter of fact:  "even if [Eberts] had knowledge of the falsities on the Financial Statement," he had no "intent to deceive Palm."  (ER 298-300).  Again, Palm had failed to prove intent by a preponderance of the evidence.  The Bankruptcy Court did not reach the reliance issue.  (ER 300).

On this appeal, Palm argues that the Bankruptcy Court's findings were clearly erroneous.  (*See, e.g.*, Appellants' Opening Br. at 26).  The Court disagrees.

"[R]eview under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623, 113 S. Ct. 2264, 124 L. Ed. 2d 539 (1993).  "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985).  Thus, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574 (citations omitted).

The Court has reviewed the Bankruptcy Court's post-trial Memorandum of Decision, the contentions of the parties on this appeal, and – where necessary – the record itself.  It is evident that the Bankruptcy Court carefully parsed the conflicting testimony as to each line item on Eberts's Financial Statement, and that each finding is amply supported by the record.  Quite simply, the Court cannot say that any of the Bankruptcy Court's findings of fact were clearly erroneous under the standards discussed above.

---

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                     Date:  **March 27, 2013**

Title:         In re:  Christopher A. Eberts

---

Moreover, Palm's reliance on the so-called "adverse inference" rule is of no moment here.  *First*, the Bankruptcy Court already considered and rejected this argument.  (*See, e.g.*, Notice of Appeal Ex. C at 12-14).  *Second*, this Court too has considered Palm's argument and concludes that the Bankruptcy Court's findings were not clearly erroneous in this respect.

Accordingly, the Bankruptcy Court's Orders and Judgments are AFFIRMED on this issue.

### 5. *Palm's Section 523(a)(2)(A) claim (nondischargeable in the amount of $190,000):  The Bankruptcy Court properly awarded prejudgment interest according to federal law*

As noted above, the Bankruptcy Court concluded that Eberts's debt to Palm was nondischargeable in the amount of $190,000, pursuant to Section 523(a)(2)(A).  That decision is not part of this appeal.

The Bankruptcy Court also awarded Palm prejudgment interest at the federal T-Bill rate of 0.51% to run from May 4, 2009, to June 9, 2011, in the total amount of $2,033.40.  (*See* Notice of Appeal Ex. B at 2).

On this appeal, Palm instead seeks prejudgment interest in the amount of $147,820.12, pursuant to California Civil Code §§ 3287 and 3289(a).  According to Palm, the award of prejudgment interest is governed by state law because the $190,000 debt arose under state law.  (Appellants' Opening Br. at 35).

As the Ninth Circuit has stated, the "federal prejudgment interest rate applies to actions brought under federal statute, such as bankruptcy proceedings, unless the equities of the case require a different rate."  *Banks v. Gill Distrib. Ctrs., Inc.*, 263 F.3d 862, 871 (9th Cir. 2001) (citations omitted) ("reasoned justification" may require different rate).

Palm has not articulated any reasoned justification or equitable rationale for why anything other than the federal rate should apply to its prejudgment interest award.  Instead, Palm argues that it brought this action pursuant to California law

---

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 11-08827-MWF**                    Date:  **March 27, 2013**

Title:       In re:  Christopher A. Eberts

---

rather than any federal statute.  Palm relies on *In re Niles*, 106 F.3d 1456, for the proposition that prejudgment interest on nondischargeable debts which "arose under state law" are "also governed by state law."  *Id.* at 1463.

In the *Banks* litigation, the bankruptcy court awarded prejudgment interest according to state law because the "removed [adversary proceeding] case . . . is equivalent to a diversity action, as it is not brought under any aspect of federal law and is in this court only due to its relationship to the Banks' bankruptcy.  In diversity cases, state law governs the award of pre-judgment interest."  *In re Banks*, 225 B.R. 738, 750 (Bankr. C.D. Cal. 1998) (citation omitted) ("Interest on a federal judgment is determined by 28 U.S.C. § 1961 . . . .").

Here, Palm's claim is not equivalent to a diversity action.  Illustratively, Palm argues that in February 2009 it won a judgment – for breach of contract – in the amount of $1,163,580.24 against WYC LLC and Eberts, as guarantor, in California state court.  (Appellants' Reply Br. at 16-17).  While that state court judgment included interest in the amount of $164,793.79, the judgment was null and void as against Eberts because it was entered a few days after he filed his bankruptcy petition.  The judgment therefore violated the automatic stay.  (Appellants' Reply Br. at 16-17).

Palm has not sought to collect this state court judgment in the adversary proceeding in this case.  Indeed, Palm did not seek recovery for breach of contract but instead for certain improper transfers.  This debt was based on federal law (*i.e.*, Section 523), not on state law.  *See* ER 8 (Compl. ¶ 46) ("The monies diverted by Eberts were obtained by false pretenses, false representations and/or actual fraud as contemplated by [Section 523(a)(2)(A)] and are, therefore, nondischargeable.").

For the same reason, *In re Niles* is distinguishable.  In that case, the claimant had won a state court judgment before the debtor filed for bankruptcy.  106 F.3d at 1458.  In the adversary proceeding, the claimant then sought to collect this judgment as nondischargeable debt pursuant to Section 523(a)(4).  *Id.*

---

UNITED STATES DISTRICT COURT          JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                     Date:  **March 27, 2013**

Title:        In re:  Christopher A. Eberts

---

Palm's claim that its debt is nondischargeable pursuant to Section 523(a)(2)(A) is different from its breach of contract lawsuit and judgment in superior court.  Rather, the $190,000 judgment in this case is a product of federal law and does not arise from the putative $1,163,580.24 amount awarded for breach of contract in the state court action.

As the bankruptcy court stated in *In re Rosen*, "when liability arises under the United States Bankruptcy Code, it is federal law that governs the interest rate. The determination of the dischargeability of a debt under § 523(a) is purely a matter of a federal law.  The interest rate in this proceeding clearly should be governed by federal law."  232 B.R. 284, 298 (Bankr. E.D.N.Y. 1999) (citations omitted).

At the hearing, counsel for Palm argued that the debt arose from the underlying loan, and that the loan agreement arose from state law.  The Court is not persuaded.  *First*, under this suggested rule, every debt would "arise under state law" and prejudgment interest always would be awarded according to state law.

*Second*, and as the Bankruptcy Court stated in this case, Palm "does not identify with any specificity the state law pursuant to which its nondischargeable debt arose. . . . Palm appears to imply that its claim arose under some sort of state law contract theory."  (Notice of Appeal Ex. C at 6).  "However, in rendering the Judgment, the [Bankruptcy] Court did not examine whether [Eberts] breached any agreement.  Rather, the [decision] rested on [Eberts]'s knowledge of the falsity of certain representations, his intent to deceive Palm, and Palm's justifiable reliance on those representations."  (*Id.*)

Stated simply, the Court agrees with the Bankruptcy Court that Palm's nondischargeable debt arose under federal law (*i.e.*, Section 523(a)(2)(A)) rather than any state law, whether contractual or otherwise.  (*See* Notice of Appeal Ex. C at 6 ("Palm has not established that its underlying debt arose under state law; therefore, state law does not govern the prejudgment interest issue.")).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES -- GENERAL

Case No.   **CV 11-08827-MWF**                               Date:   **March 27, 2013**

Title:          In re:  Christopher A. Eberts

---

Accordingly, the Bankruptcy Court's Orders and Judgments are AFFIRMED on this issue.

**Conclusion**

For the reasons stated above, the Bankruptcy Court's Orders and Judgments are AFFIRMED.

IT IS SO ORDERED.